UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CRIMINAL DIVISION
LEXINGTON

CRIMINAL ACTION NO. 24-CR-26-KKC-MAS

UNITED STATES OF AMERICA                                         PLAINTIFF

V.                            PLEA AGREEMENT

MAURICE A. CURRY                                                  DEFENDANT

\* \* \* \* \*

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the defendant will enter a guilty plea to Counts 1 – 5 of the Indictment, charging a violation of 18 U.S.C. § 1951, Hobbs Act Robbery, Count 6 of the Indictment charging a violation of 18 U.S.C. § 924(c)(1)(A), as amended to possession of a firearm in furtherance of a crime of violence (no brandishing), and Counts 8 and 9 of the Indictment charging a violation of 18 U.S.C. § 924(c)(1)(A), possessing and brandishing a firearm in furtherance of a crime of violence. At sentencing the United States will dismiss Count 7 of the Indictment.

2. The essential elements of Counts 1 - 5 are:

    (a) That the defendant knowingly obtained or took property of another, or from the presence of another;

    (b) That the defendant took this property against the victim's will, by actual or threatened force, violence, or fear of injury, whether immediately or in the future; and

    (c) That as a result of the defendant's actions, interstate commerce, or an item moving in interstate commerce, was delayed, obstructed, or affected in any way or degree.

3. The essential elements of Count 6 are:

(a) That the defendant committed a crime of violence as reflected in Counts 2 of the Indictment;

(b) That the defendant knowingly possessed a firearm; and

(c) That the possession of the firearm was in furtherance of the crime of crime of violence as reflected in Counts 2 of the Indictment.

4. The essential elements of Counts 8 and 9 are:

(a) That the defendant committed a crime of violence as reflected in Counts 4 and 5 of the Indictment;

(b) That the defendant knowingly possessed a firearm;

(c) That the defendant brandished the firearm; and

(d) That the possession of the firearm was in furtherance of the crime of crime of violence as reflected in Counts 4 and 5 of the Indictment.

5. As to the Indictment, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On September 10, 2023, Lexington Police received a call reference a robbery at Lex Liquor on Richmond Road, in Fayette County, in the Eastern District of Kentucky. Upon arrival, officer learned that a little after midnight, an individual, later identified as Maurice Curry, approached the drive-up window, and as the clerk walked away, he began to crawl through the window. The clerk attempted to keep Curry from coming through the window and Curry produced an "electric stun gun" from his pocket and attacked the clerk. Curry discharged the stun gun into the clerk's chest and then pushed the clerk causing injury to his chest. After hearing the commotion, the store owner came out from the back. Curry stated he had a gun and threatened to shoot them. He took approximately $1028 from the cash drawer and caused damage to a monitor. He fled the scene.

(b) Approximately, 3 hours later, the police received another call, this

2

call was reference to a robbery at the Speedway on Tates Creek Road, in Fayette County, in the Eastern District of Kentucky. Upon arrival police learned that a suspect, later identified as Curry, had entered the store. After retrieving a bottle of water, he leaped upon the counter. He punched the female clerk in the face a couple of times and knocked her to the ground. He then began tasering her on the neck on body. Officers observed physical evidence of injuries from the tasing. He threatened her to imply he had a firearm. Curry took cash from the store totaling approximately $70.

(c)    Later, at approximately 7:45 am, the Frankfort Police received a call regarding a robbery at the Katz Food Mart on Georgetown Road, in Franklin County, in the Eastern District of Kentucky. The clerk advised that the suspect, later identified as Curry, had entered the store and pulled out money to purchase something. As the clerk opened the register, Curry grabbed the drawer pulling out a pink taser. He then shoved her to the ground and stomped on her neck. He struck her in the face several times and was in possession of a taser. The victim had visible injuries and was transported to the ER. Curry fled taking approximately $300.

(d)    While officers were on the scene at Katz Food Market another call was received regarding a robbery at the Shell on Versailles Road, in Franklin County, in the Eastern District of Kentucky and a short time later another at Walgreens on Versailles Road, also in Franklin County. The clerk of Shell advised officers that the suspect had entered the store and robbed him at gun point. The clerk also advised the suspect to beat him with the firearm. The clerk had a visible knot on the right side of his head just above his eye. During the robbery, the suspect, later identified as Curry, took approximately $5,000. The suspect also took an iPhone, Mac Book, air pods, and keys.

(e)    The clerk at Walgreens, in Franklin County, in the Eastern District of Kentucky advised that the suspect, later identified as Curry, came into the store and had a torn $20 bill wanting to buy something. When the clerk opened the cash drawer, he leaned over the cash drawer and began taking money. The clerk noticed that Curry was holding a firearm across his chest. Curry was observed by witnesses in the Walgreens entering a Maroon Lexus and captured a photo of the vehicle.

(f)    Frankfort officers were able to locate the devices stolen from the Shell clerk. With the suspect description, vehicle description, and device location, officers were able to locate the vehicle. As officers attempted a traffic stop, the suspect fled and wrecked the vehicle. Curry bailed out of the wrecked vehicle and was apprehended after a foot pursuit. Evidence related to the robberies was located.

6. The statutory punishment for Counts 1 – 5 is imprisonment for not more than 20 years, a fine of not more than $250,000, and a term of supervised release of not more than 3 years. The statutory punishment for Count 6 is imprisonment for not less than 5 years and not more than life, consecutive to any other sentence, a fine of not more than $250,000, and a term of supervised release of not more than 5 years. The statutory punishment for Counts 8 and 9 is imprisonment for not less than 7 years and not more than life, consecutive to any other sentence, a fine of not more than $250,000, and a term of supervised release of not more than 5 years. A mandatory special assessment of $100 per count applies, for a total of $800, and the Defendant will pay this assessment to the U.S. District Court Clerk at the time of the entry of the plea.

7. Pursuant to Rule 11(c)(1)(B), the United States and the defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

    (a) The United States Sentencing Guidelines (U.S.S.G.) in effect at the time of sentencing will determine the Defendant's guidelines range.

    (b) Pursuant to U.S.S.G. § 1B1.3, the defendant's relevant conduct includes the facts set forth in paragraph ~~4~~ 5 and all provided discovery materials. [initialed AM / WL CtR 1.20.26]

    (c) Group 1 (Count 1)

        (i) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

        (ii) Pursuant to U.S.S.G. § 2B3.1(b)(2)(D), the offense level is increased by 4 levels because a dangerous weapon was otherwise used.

4

    (iii) Pursuant to U.S.S.G. § 2B3.1(b)(3)(A), the offense level is increased by 2 levels because the victim sustained bodily injury.

 (d) Group 2 (Count 2)

    (i) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

    (ii) Pursuant to U.S.S.G. § 2B3.1(b)(3)(A), the offense level is increased by 2 levels because the victim sustained bodily injury.

 (e) Group 3 (Count 3)

    (i) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

    (ii) Pursuant to U.S.S.G. § 2B3.1(b)(2)(E), the offense level is increased by 3 levels because a dangerous weapon was possessed.

    (iii) Pursuant to U.S.S.G. § 2B3.1(b)(3)(A), the offense level is increased by 2 levels because the victim sustained bodily injury.

 (f) Group 4 (Count 4)

    (i) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

    (ii) Pursuant to U.S.S.G. § 2B3.1(b)(3)(A), the offense level is increased by 2 levels because the victim sustained bodily injury.

 (g) Group 5 (Count 5)

    (i) Pursuant to U.S.S.G. § 2B3.1(a), the base offense level is 20.

 (h) Pursuant to 3D1.4, Groups 1, 2, 3, and 4 each count as 1 unit, and Count 5 counts as a ½ unit, totaling 4 ½ units. The combined offense level is increased by 4 levels.

 (i) The combined offense level is 30 for Groups 1 – 5.

 (j) Pursuant to U.S.S.G. § 2K2.4(b), the offense level for Count 6 is the minimum term of term of imprisonment required by the statute, which is 5 years consecutive to any other sentence.

 (k) Pursuant to U.S.S.G. § 2K2.4(b), the offense level for Counts 8 and

5

9 is the minimum term of term of imprisonment required by the statute, which is 7 years consecutive to each other and consecutive to any other sentence.

(l) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

(m) Pursuant to U.S.S.G. § 5E1.1, restitution is at least $6,398. The total amount of restitution will be determined prior to sentencing.

7. The United States asserts that pursuant to U.S.S.G. § 3C1.2, the offense level is increased by 2 levels for reckless endangerment during flight. The Defendant disagrees and reserves the right to challenge any application of U.S.S.G. § 3C1.2.

8. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

9. The defendant will not file a motion for a decrease in the offense level based on a mitigating role pursuant to U.S.S.G. § 3B1.2.

10. The defendant waives the right to appeal the guilty plea and conviction. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

11. The defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the course of the investigation, unless an item is specifically provided for in another provision of this Agreement. The defendant also waives any notice of a proceeding to

implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

12. The defendant agrees to pay restitution in the amount and to the victims as ordered at sentencing, pursuant to 18 U.S.C. § 3663(a)(3). The defendant agrees that the amount is at least $6,398. The defendant agrees that the final restitution amount may include restitution for all losses caused by the defendant's criminal conduct or through the commission of the offense of conviction, even if such losses resulted from crimes not charged or admitted by defendant in the factual basis.

13. The defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period extending 90 days from the date of sentencing. The defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the defendant agrees to notify the United States Attorney's Office and obtain its consent before

transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the defendant is ever incarcerated in connection with this case, the defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

14. The defendant understands and agrees that, pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court imposes a schedule of payments, the defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that

any unpaid obligations will be submitted to the United States Treasury for offset. The defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The defendant expressly authorizes the United States to obtain the defendant's credit reports at any time. The defendant authorizes the U.S. District Court to release funds posted as security for the defendant's appearance bond in this case, if any, to be applied to satisfy the defendant's financial obligations contained in the judgment of the Court. The defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

15. If the defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the defendant waives any right to challenge the initiation of additional federal charges.

16. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the defendant. The United States has not made any other promises to the defendant.

17. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

18. The defendant and the defendant's attorney acknowledge that the defendant understands this Agreement, that the defendant's attorney has fully explained this

Agreement to the defendant, and that the defendant's entry into this Agreement is voluntary.

|  |  |
|---|---|
| Date: 1/20/26 | PAUL C. McCAFFREY<br>FIRST ASSISTANT<br>UNITED STATES ATTORNEY<br><br>By: *[signature]*<br>Cynthia T. Rieker<br>Assistant United States Attorney |
| Date: 1-19-26 | *[signature]*<br>Maurice A. Curry<br>Defendant |
| Date: 1-19-26 | *[signature]*<br>Abe Mashni<br>Attorney for Defendant |

10