**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION**
**LEXINGTON**

**CRIMINAL ACTION NO. 5:24-CR-26-KKC**

**UNITED STATES OF AMERICA**                                           **PLAINTIFF**

**VS.**

**MAURICE CURRY**                                                **DEFENDANT**

---

**DEFENDANT'S SENTENCING MEMORANDUM**
**AND**
**MOTION FOR DOWNWARD VARIANCE**

---

### I.     Introduction & Requested Sentence

Maurice A. Curry appears for sentencing as a 24-year-old man who has accepted responsibility for serious conduct. The defense does not minimize the harm caused by the robberies, the fear inflicted on the victims, or the need for a sentence that reflects the seriousness of the offenses. Mr. Curry has pled guilty, admitted his responsibility, and now asks the Court to impose a sentence that is sufficient, but not greater than necessary, under 18 U.S.C. § 3553(a).

The Presentence Investigation Report calculates an advisory guideline range of 78 to 97 months on Counts 1 through 5, followed by mandatory consecutive sentences of 60 months on Count 6 and 84 months each on Counts 8 and 9. PSR ¶¶ 107-09. The mandatory § 924(c) terms alone require 228 months - nineteen years - of imprisonment. Section 924(c) requires the five-year and seven-year minimums and requires those terms to run consecutively. 18 U.S.C. § 924(c)(1)(A), (D).

Mr. Curry respectfully requests a downward variance on Counts 1 through 5 to run concurrently with one another, followed by the mandatory consecutive terms of 60 months on Count 6, 84 months on Count 8, and 84 months on Count 9. This request is consistent with *Dean v. United States*, 581 U.S. 62 (2017), which recognizes that a sentencing court may consider the substantial mandatory consecutive § 924(c) sentence when deciding the appropriate sentence for the predicate counts, including a greatly reduced sentence on those counts.

## II. The Defendant's History and Characteristics

Section 3553(a)(1) requires the Court to consider not only the offense, but also "the history and characteristics of the defendant." The statute directs the Court to impose a sentence that is sufficient, but not greater than necessary, after considering the relevant factors along with the purposes of sentencing. 18 U.S.C. § 3553(a).

Mr. Curry's early life is marked by family disruption, mental-health problems, substance use, and prolonged institutional placement during adolescence. These variables do not excuse the offense. But it helps contextualize how a young man who now enjoys family support, intelligence, and the capacity for work and fatherhood reached this point - and why the requested sentence is sufficient but not greater than necessary.

Mr. Curry was born and raised in Lexington. His mother, Sheri Curry, is a licensed practical nurse who worked long hours to provide for him. PSR ¶¶ 76-77. His father suffered from multiple sclerosis, was placed in a nursing facility during Mr. Curry's childhood, had minimal contact with him thereafter, and died in 2018. PSR ¶¶ 76-77. Family members consistently describe that loss as a turning point. Kayla Dotson, who has known Mr. Curry his entire life and considers him a younger brother, recalls that Mr. Curry once spoke with tears in his eyes about losing his father

and feeling angry at the world. Paula Hall similarly describes a young boy who tried to stay strong for his mother while carrying the weight of his father's illness and absence.

Sharon Stiltner, Mr. Curry's grandmother, adds important context. She explains that Mr. Curry's mother worked 12-hour nursing shifts and that the family chose to raise their biracial son in Lexington, away from the extended family support that might otherwise have helped. In her words, "it takes a village," and Mr. Curry did not have a stable one. That observation is supported by the official record. The PSR reflects substantial child-protective-services contact, a substantiated dependency finding in 2012, and extensive juvenile placements beginning when Mr. Curry was 11 years old. PSR ¶¶ 78-80.

Those placements were not brief. The PSR lists a series of juvenile detention, residential, group-home, and treatment placements from 2012 through 2019, including Sunrise Cumberland Adventure Program, Sunrise Residential Spring Meadows, Children's Home of Northern Kentucky, Cumberland Hall, Campbell Regional Juvenile Detention Center, Foothills Academy, and Adair Learning Academy. PSR ¶ 79. The PSR also notes additional placements at Woodsbend Detention Center, Breathitt Revocation Center, and Uspiritus Brooklawn, and records that Mr. Curry reported regular physical and mental abuse in group homes. PSR ¶ 80.

Mr. Curry's mental-health history shows documentation beginning in childhood. He reported an ADHD diagnosis at age seven and treatment with Adderall. PSR ¶ 86. Records also reflect diagnoses or treatment history involving oppositional defiant disorder, conduct disorder, major depressive disorder with psychotic features, intermittent explosive disorder, and mood disorder. PSR ¶¶ 86-88. He was prescribed an array of psychotropic medications as an adolescent, including antidepressant, antipsychotic, stimulant, sleep, and mood-related medications. PSR ¶¶ 87-88.

The forensic evaluation presents Mr. Curry as someone at risk and with some level of responsibility. It identifies cannabis-use disorder and stimulant-use disorder in sustained remission in a controlled environment, antisocial personality disorder, and a rule-out diagnosis involving psychotic symptoms. His evaluation recommends continued medication management, psychiatric evaluation for psychotic symptoms, and substance-use intervention. PSR ¶ 91. These recommendations matter - they show that Mr. Curry's needs are identifiable, treatable, and directly relevant to the Court's sentencing decision.

The same history appears in his education and work record. Although, Mr. Curry struggled with impulsivity, attention, aggression, and authority throughout school, he nevertheless earned a high-school diploma and graduated early from Adair County High School. PSR ¶¶ 95-97. He later enrolled for a semester at Bluegrass Community and Technical College and later at Kentucky State University. PSR ¶ 97. He had held jobs at Sonny's BBQ, Walmart, AVIS Rental Car, Papa Johns, and Wildcat Moving. PSR ¶¶ 98-101. While his work history was unstable, it shows employability and a foundation for future vocational programming.

The character letters provided to the Court help frame Mr. Curry in a wider lens beyond the offense conduct. Venisa Dotson, his godmother, describes him as a respectful child raised with manners - "yes ma'am," "no ma'am," "please," and "thank you." She states that he has never treated her with hatred or aggression and that she believes he is remorseful and capable of growth. Paula Hall describes him as warm-hearted, vulnerable to unhealthy relationships and influences, and deeply committed to being a better father than the father he lost. Kayla Dotson describes porch conversations in which Mr. Curry spoke candidly about his fear of becoming a father because he did not know what having a father looked like. Sharon Stiltner states that Mr. Curry talks and FaceTimes with his son as often as possible and that he was a good father before incarceration.

Sheri Curry, his mother, writes that he is remorseful, understands the weight of his actions, and wants to become a stable and responsible father to his young son, Joshawn.

These letters do not ask the Court to ignore accountability. They ask the Court to impose a sentence that leaves room for rehabilitation after the mandatory punishment required by Congress. They also show that Mr. Curry has family support waiting for him, a young son who gives him a reason to change, and a mother and extended family prepared to help him build a lawful life when he returns.

### III. Analysis of 18 U.S.C. § 3553(a) Factors

The requested sentence satisfies the purposes of § 3553(a)(2). Any sentence this Honorable Court imposes will be significant. It will be at minimum a 19-year federal sentence for a 24-year-old man. It will reflect the seriousness of the offense, promote respect for the law, provide just punishment, deter future conduct, protect the public, and allow Mr. Curry to receive treatment and programming in the most effective manner.

First, the nature and circumstances of the offense are serious, and Mr. Curry understands and accepts that. The robberies involved threats, physical assaults, a taser, firearm conduct, injury, and fear. The Court should account for that harm. But the Court should also account for the structure of this case: all counts arose from a compressed course of conduct on September 10, 2023; Mr. Curry pled guilty; no obstruction enhancement applies; and the mandatory § 924(c) sentences already impose 19 years before the Court adds any guideline sentence on Counts 1 through 5. PSR ¶¶ 7-15, 56-57, 103-09. Adding another 78 to 97 months would produce a sentence greater than necessary for this particular defendant.

Second, Mr. Curry's criminal history supports a variance when viewed accurately and with specificity. He is not a person with no prior justice-system contact. His juvenile record and adult

misdemeanor-level history show longstanding behavioral problems and poor impulse control. But the advisory criminal-history calculation places him in Category II based on two points. PSR ¶¶ 63-67. His adult record does not reflect a prior federal conviction, a prior felony prison sentence, or a history comparable to the severity of the present mandatory sentence. The Court can recognize the prior conduct without concluding that an additional 78 to 97 months is necessary on top of the 19-year mandatory term.

Third, Mr. Curry has accepted responsibility. He admitted his conduct before the Court and received the three-level reduction under U.S.S.G. § 3E1.1. PSR ¶¶ 15, 56. He did not obstruct justice. PSR ¶ 14. His guilty plea spared the victims and the Court the burden of trial and shows that he understands he must answer for what he did. His mother, godmother, grandmother, and family friends independently describe remorse, embarrassment, and a desire to change.

Fourth, the need for deterrence and public protection is met by the requested sentence. A 19-year federal sentence sends a clear message to Mr. Curry and to the public that violent robberies and firearm offenses carry severe consequences. The length of the mandatory term, followed by supervised release with treatment and monitoring, will protect the public without imposing punishment beyond what § 3553(a) requires.

Fifth, the need for treatment strongly favors the requested variance. Mr. Curry's record reflects childhood ADHD, adolescent psychiatric treatment, substance-use history, self-medication, and symptoms requiring ongoing evaluation. PSR ¶¶ 85-94. The forensic evaluators specifically recommended continued medication management, psychiatric evaluation, and substance-use intervention. PSR ¶ 91. A sentence that includes the mandatory 19 years, BOP treatment recommendations, and a structured supervised-release plan will adequately serve public safety without simply adding more months to the predicate counts.

Finally, Mr. Curry has begun to show the kind of reflection that supports rehabilitation. Kayla Dotson reports that he wrote a letter to at-risk students warning them about drugs and poor choices. Sheri Curry believes that, with treatment and maturity, he can use his experience to warn others about the consequences of illicit drug use and impulsive decisions. Mr. Curry has also expressed interest in substance-abuse treatment while in BOP custody. PSR ¶ 94. These facts do not erase the offense. They show that the Court's sentence can punish while preserving possibility of change and hope of rehabilitation.

## IV. Conclusion

Mr. Curry stands before the Court as more than the worst day of his life. He is a young man shaped by a father's disabling illness and death, years of juvenile placements, documented mental-health struggles, substance use, and unstable development. He is also a son, a father, a high-school graduate, a person with work experience, and someone whose family remains willing to support his rehabilitation.

For these reasons, Mr. Curry respectfully asks the Court to grant a downward variance on Counts 1 through 5, concurrent with one another, followed by the mandatory consecutive sentences of 60 months on Count 6, 84 months on Count 8, and 84 months on Count 9.

Respectfully submitted,

*/s/ Abraham Mashni*
Abraham Mashni
Mashni Law, PLLC
157 N. Limestone St., Suite 250
Lexington, KY 40507
(859) 201-3550
abe@kycriminaldefense.com
*Counsel for Maurice A. Curry*

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that on the 7th day of May 2026 the foregoing Sentencing Memorandum was filed with the clerk of the court using the CM/ECF system which will send an electronic filing to all involved parties.

<u>*/s/ Abraham Mashni*</u>
Abraham Mashni
*Counsel for Maurice A. Curry*